HARRIETTA SMITH, Appellee, v. TOWN OF HUDSON, Appellant.

MUNICIPAL CORPORATIONS: Streets, etc.—Negligence—Jury Ques-
1  tion. Evidence relative to an unguarded and unlighted excavation in
   a public street reviewed, and held to present jury questions on the
   issues of negligence of both plaintiff and defendant.

MOTOR VEHICLES: Law of Road—Traveling on Left-hand Side—
2  Nonapplicability of Statute. The statutory command that the oper-
   ator of an automobile in cities and towns "shall at all times travel
   on the right-hand side of the center of the street" has no application
   to a controversy between the municipality, as a defendant, and a
   plaintiff who was the sole traveler upon the street at the time in
   question. (See Book of Anno., Vol. 1, Sec. 5019, Anno. 3, 4.)

Headnote 1:  28 Cyc. pp. 1506, 1510.  Headnote 2:  28 Cyc. p. 41.

Headnote 2:  13 L. R. A. (N. S.) 1267; 21 L. R. A. (N. S.) 668; 12 A.
L. R. 465; 13 R. C. L. pp. 271, 472.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

FEBRUARY 16, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

Action for damages sustained by reason of an excavation in
defendant's street. Verdict and judgment for plaintiff. De-
fendant appeals.—*Affirmed.*

*Pickett, Swisher & Farwell,* for appellant.

*Reed, Tuthill & Reed,* for appellee.

MORLING, J.—Three questions are argued: 1. Whether there
was sufficient evidence of defendant's negligence. 2. Whether
the plaintiff was, as matter of law, guilty of contributory negli-
gence. 3. Failure to instruct on the law of the road.

I. The sufficiency of the evidence of defendant's negligence
to go to the jury is not seriously argued. The accident occurred
about 9 o'clock, Sunday evening, October 29, 1922. About two

1. MUNICIPAL
CORPORATIONS:
streets, etc.:
negligence:
jury question.

days before, a ditch for a water-pipe connection had been dug from the west side to the center of Main Street in defendant town about the middle of the block between Third and Fourth Streets; Main Street running north and south, and Third and Fourth, east and west. The ditch was 9 feet deep. The dirt was thrown out on either side, 2½ to 3 feet high, the full length of the excavation. There was no barricade. A red lantern was put in position about dusk Saturday evening, and burned until 8 o'clock Sunday morning, when it was turned out. A witness for defendant testified that he put oil in the lantern Saturday evening until he thought it was full. "A lantern of the character that I used on this excavation would usually burn two nights." He says he lighted the lantern on Sunday evening about dusk, and that it was burning when he left it. There was evidence (denied by him) that he said to plaintiff, "Don't blame me for getting hurt because the wick wasn't long enough." A witness for plaintiff testified that, at half past six Sunday evening, she didn't notice the light. There was evidence that the lantern was not burning, and that there was no oil in it, at the time of the accident. There is no evidence that it was lighted at that time, and no claim that more than one lantern had been placed there. Defendant's marshal and street commissioner for defendant testified to his locating the Y and measuring for the contractor to put in the ditch, and also to his seeing the lantern on Saturday evening. The question of negligence was for the jury. *Garnetz v. City of Carroll,* 136 Iowa 569; *Fox v. City of Chelsea,* 171 Mass. 297 (50 N. E. 622); *Baker v. City of Grand Rapids,* 111 Mich. 447 (69 N. W. 740).

II. Plaintiff, at the time of the accident, was riding on the front seat of a Ford touring car owned by her husband and being driven by her son-in-law on a family errand. Their starting point to go north on Main Street was about 2½ blocks south of the excavation. They were traveling north at about 10 or 12 miles per hour. There was evidence that it was a bright moonlight night. There were street lights at the intersections south of the place of the accident, and one at the Fourth Street intersection. The street was not paved. It had been graded in the spring. There was evidence that it was not rough or rutty. One of defendant's witnesses testified to driving his truck

around the end of the excavation, and to having no difficulty in driving over the street on the easterly half of it. The son-in-law, Richards, testified:

"The first I knew that the ditch was there was when I dropped into it * * * The dirt was thrown out on both sides of the ditch. There was about two feet of dirt there; but it slanted out, just like that, so you could drive right over and drop in. That is all you had to do. * * * I was traveling right in the center of the street, where the track was; and that was all the track there was, and there wasn't any other place to drive but in the track. That street had been graded up, and nobody else traveled but just right in the center of the street. I was driving, looking right down the road. I didn't see the ditch. I didn't see the dirt thrown out on either side of this ditch, before I hit the pile on the south side. Mrs. Smith was looking right down north. * * * I wouldn't know if it was moonlight or not, because I didn't pay much attention to what the night was,—it wasn't a very dark night."

On cross-examination, he testified that the lights on the car were lighted, and the street lights burning. The brake was in working order, and he could stop within the length of the car,— about 12 feet. If that street light wasn't burning, one could probably see an object 5 or 6 rods ahead.

"As long as that street light is burning there, you couldn't see 14 feet ahead of you. * * * Q. Why didn't you see this dirt pile and ditch, that you say could have been seen for 5 or 6 rods, by the headlights on your automobile? A. Because that street light blinded the headlights; and they would have blinded you, too,—you couldn't see. Q. Then the reason you didn't stop your car before you drove into the ditch was because the street light at the corner of Main and Fourth Street blinded your headlights, and blinded you? A. Yes, sir, because I couldn't see the ditch. * * *"

On redirect examination, he testified that he meant that the street light was blinding him "to a certain extent, which the car lights wouldn't show the roughness of the road."

On recross-examination, asked what he meant by "certain extent," he answered:

"Well, that goes to show the street light wouldn't give the headlights any chance to come up, to show any roughness of the

road. * * * The headlights didn't show any object of the ditch. * * * It wasn't the fault of the headlights; the headlights was burning all right. * * * I meant the street light shone against the headlights; that the street light blinded me to a certain extent, and keeping the headlights from showing the objects in the road. * * * from seeing the ditch,—that is what I mean.''

Plaintiff testified that Richards was watching right down the street, and she was watching, too· ''We were right in the traveled track. There was only one track on that street.'' Didn't see the ditch before she went into it.

''I was looking right around the side of the wind shield, as we came down the street,—looking north, in the direction our car was going.''

On cross-examination, she testified that she knew the moon wasn't shining; that, when they started on Main Street, they were driving on the right-hand side; that there were no automobiles or teams or travelers of any kind in the street, interfering in any way with their travel; that she was leaning out to the side because she generally rode that way, ''because I like to see what is going on;'' that she could see through the wind shield, straight ahead.

''Q. What were you leaning out that way for, before the accident, as you drove down Main Street, Mrs. Smith? A. Well,. the street wasn't very smooth, and I don't know,—I was just kind of watching along, so that we wouldn't run into anything. * * * There was a street light right ahead of us, and when I looked through the wind shield with my glasses on, it glared so I couldn't see. * * * Q. That was what kind of a street light,— arc light? A. Yes, sir, I guess that is what you would call it,— one that hangs down, over the intersection of the street. Q. That was so bright that the glare, as you looked through the wind shield, looking down the street, bothered your vision some, so that you leaned out, to look out past the wind shield? * * * A. Yes, sir, with the car lights. * * * I say, with the car lights. * * * I say that the car lights that shone on the street light,— I couldn't see.''

She continued, on cross-examination, that she was watching so she could tell her son-in-law if she saw anything, and have him stop and avoid any obstruction; that she was taking special pains to watch for her own safety. She testified that she didn't

see the ditch before she ran into it,—didn't see any lights or lanterns. There were inconsistencies and contradictions in her testimony.

The defendant urges that the pile of dirt was so conspicuous that, if plaintiff and Richards had looked, they must have seen it in time to have avoided running into it. We do not think, however, that the court should have so held peremptorily. We think that the facts and the questions of contributory negligence were for the jury. The case is not within *Cutshall v. City of Keokuk,* 185 Iowa 808.

III. Defendant assigns error "in failing to instruct the jury upon the statute that operators of motor vehicles 'in cities and towns shall at all times travel on the right-hand side of the center of the street.'"

The statute referred to is Subsection a, Section 26, Chapter 275, Acts of the Thirty-eighth General Assembly, reading:

"The operator of a motor vehicle shall turn to the right when meeting another vehicle, and in cities and towns shall at all times travel on the right-hand side of the center of the street."

The evidence shows that there were no other travelers in the street at that time. No rights and duties of travelers in the street as between each other are involved. The law of the road 2. MOTOR VE- has reference primarily to those duties and HICLES: law of rights. It is not claimed that driving on the road: traveling on left-hand left-hand side of the street was negligence *per* side: nonappli- cability of statute. *se,* nor could such a contention, if made, be sustained. *McElhinney v. Knittle,* 199 Iowa 278; *Riepe v. Elting,* 89 Iowa 82; *Buzick v. Todman,* 179 Iowa 1019; *Johnson v. Kinnan,* 195 Iowa 720. See *Sims v. Eleazer,* 116 S· C. 41 (106 S. E. 854, 24 A. L. R. 1293) ; *Cupples Merc. Co. v. Bow,* 32 Idaho 774 (189 Pac. 48, 24 A. L. R. 1296, and the annotations).

Speaking exclusively to the question of the rights and duties of the plaintiff and of defendant town, as related to the present controversy, there having been no other travelers using the street at the time, the plaintiff had the right to be at any place in the traveled part of the street, and was not a wrongdoer, or negligent, merely because she was to the left of the center of the street.

We find no error in the failure to charge as urged. Ap-

pellee's amendment to abstract is an unnecessary reiteration, and the costs of it will be taxed to appellee. The judgment is—
*Affirmed.*

DE GRAFF, C. J., and EVANS and STEVENS, JJ., concur.