O. E. DICKESON, Appellee, v. LEO L. LZICAR et al., Appellants.

No. 39400.

276

MAY 14, 1929.

*Grimm, Wheeler, Elliott & Shuttleworth,* for appellants.

*Barnes, Chamberlain, Hanzlik & Thompson, Don Barnes,* and *G. K. Thompson,* for appellee.

MORLING, J.—When struck by defendants' truck, plaintiff was on the concrete driveway, which was also the sidewalk, between the curb and the Nash-Flodin Fruit Company building, on the west side of First Street in Cedar Rapids. First Street runs north and south, is 100 feet in width between property lines and 60 feet between curbs, and has 20-foot sidewalks on either side. The Nash-Flodin Fruit Company building, on the west side of the street, has two vehicular and one individual entrances. South of this building is a fire station. The entire sidewalk on the east side of these buildings and a space south and one north of them form also a concrete driveway, about 130 feet in length, over which is the vehicular entrance to the buildings. Fifth Avenue enters from the east, but does not cross First Street. Its north line, if extended westwardly across First Street would be about 100 feet south of the Nash-Flodin Building, and 30 feet south of the fire station. Plaintiff, just prior to the accident, had procured from the Nash-Flodin building merchandise, had taken it to the car of witness Beach, parked directly across First Street, and had returned to the Nash-Flodin Building, for a bag or paper to protect the cushion of the Beach car, had procured it, and, leaving the building over the driveway, held it up, for Beach's observation. Beach says:

"He [plaintiff] was standing still, and looked to me as if he must have been about six feet from the building, on the cement

portion in front of the building. He nodded his head to me, and then the truck hit him. The truck cut from Fifth Avenue, angling right across on the left-hand side of the street. He was on the right-hand side, and just turned the corner from Fifth Avenue, and started across the street, cutting the corner, heading straight for the entrance to the Nash-Flodin Company's store. * * * The truck was kind of at an angle when it hit him, and kind of covered Mr. Dickeson up. All I saw of what happened to Mr. Dickeson was that he was up in the air. * * * The front end of the truck stopped close to the building. I had observed the truck from the time it came into First Street from Fifth Avenue.''

He says he could give no idea how fast the truck was traveling in miles per hour, but it was traveling fast, as it came from Fifth Avenue, and did not apparently slacken speed; that it traveled 8 or 10 feet after it struck plaintiff; that the pavement was slippery, and the truck slid 4 or 5 feet; that it apparently slackened about the time it came in contact with plaintiff.

Plaintiff's testimony is that he went possibly 12 or 13 feet ''from the building on the sidewalk [driveway] there, and had this paper sack in my left hand, and held it up, and Mr. Beach shook his head, indicating that was what he wanted. About that time, I got hit with the car. * * * The car came from my right. I would say I saw it just a very few feet away from me, just as I got struck. * * * I should judge it was 4 or 5 feet away when I first saw it coming toward me. I couldn't tell the rate of speed it was coming. From the time I first saw it till it struck me, it seemed only an instant. * * * I tried to stick my hand—like this—toward the car, possibly to protect me. * * * I was thrown 10 or 12 feet, in the direction of the Nash-Flodin building, and lit possibly 4 feet from the building.''

The driver of the truck says that he was going to the Nash-Flodin building for merchandise; that, when he left Fifth Avenue, he was going 10 or 12 miles an hour; that he could stop in 2 or 3 feet; that he went about 30 feet on First Street before he angled to the Nash-Flodin office; that he was then about 75 feet from, and going straight to the front of, the building, intending to drive on the driveway, wheel to the east, and then back into the building; that, just as he got up to the entrance, plaintiff

came out, with a sack in his hand, walking briskly; that he saw plaintiff all the time from the time plaintiff came out of the door until he was struck. As soon as he saw plaintiff, he put on his brakes, but did not use the emergency brake until after he hit plaintiff; that the truck was going, before he applied the brakes, 7 or 8 miles per hour; that it struck plaintiff 10 or 12 feet from the door; that the truck must have gone about 7 feet over the sidewalk-driveway before it hit him; that plaintiff just walked right into him; that the car did not move more than 3½ feet after he applied the brakes.

I. The court charged that plaintiff alleged two grounds of negligence: First, in traveling on the wrong, or left-hand, side of the street; second, in failing to drive the truck in a careful and prudent manner, and at a rate of speed that would not endanger the property or life or limb of another. He further charged that, in considering the first charge of negligence, the law provides that, in cities and towns, the operator of a motor vehicle should at all times travel on the right-hand side of the center line of the street, which the court said is construed to mean that, where a driver is proceeding northerly, he must drive on the easterly side of the center line of the street, where such easterly side is in a passable and unobstructed condition. The court further charged that, under this (and the other) rule laid down, it was the duty of defendant's driver to comply therewith, and to operate his truck with reasonable care and prudence and at a rate of speed which would not endanger the property or life or limb of another; and that, if he did not, and his failure was the direct and proximate cause of the collision, and plaintiff was in the exercise of due care, their finding must be for the plaintiff. Defendants complain that Section 5019, Code of 1927,—"the operator of a motor vehicle in cities and towns shall at all times travel on the right-hand side of the center of the street,"—has no application to the facts of this case.

Section 5019 is a subsection of Section 26, Chapter 275, Acts of the Thirty-eighth General Assembly, the main purpose of which is to prescribe rules or law of the road. It has particular and primary reference to persons, vehicles, and property in or approaching the vehicular roadway of the street, and its primary purpose is to regulate traffic and provide protection to such

persons, vehicles, and property and to safeguard against accidents there. Plaintiff was not in the vehicular roadway of the street, nor, at the time of the accident, was plaintiff's automobile. As plaintiff had not got to the roadway, it makes no difference to the question here considered that he was intending to cross it. The law does not, in the absence of ordinance, prohibit left-hand turns, nor (as applied to the case here) does it prescribe rules for making them, or distances or courses in which they may be made. The ordinary rules laid down in the law of negligence, of course, apply to a driver in making such turns. He must exercise ordinary and reasonable care and caution, and act with due regard to the rights of all persons who may be or may reasonably be expected to be in or approaching the path of his vehicle. The care and circumspection required, to be reasonable, must be proportioned to the dangers that may reasonably be anticipated. *Sheridan v. Limbrecht,* 205 Iowa 573; *La Barge v. Union Elec. Co.,* 138 Iowa 691; 45 Corpus Juris 696.

Increase in apparent dangers necessitates increased vigilance and caution. (This applies to both parties.) Presence on the left-hand side of the street, whether crossing or traveling there, is not *per se,* regardless of the purpose or necessity thereof, or of then existing and reasonably apparent or reasonably to be anticipated conditions, negligence. *Smith v. Town of Hudson,* 202 Iowa 300; *Cuthbertson v. Hoffa,* 205 Iowa 666; *Axelson v. Jardine,* 57 N. D. 524 (223 N. W. 32); *McElhinney v. Knittle,* 199 Iowa 278; 42 Corpus Juris 901, 1021. In saying this, we are not to be understood as holding that driving on the wrong side of the street may not be evidence of negligence, even as to persons or property not in the vehicular roadway. *Hansen v. Kemmish,* 201 Iowa 1008; *Axelson v. Jardine,* 57 N. D. 524 (223 N. W. 32). Here the accident did not occur in the vehicular roadway of the street, and is not attributable to the presence there of defendants' truck; but it occurred on the sidewalk-driveway, and is attributable to the truck's being there. Driving on the wrong side of the street was not the proximate cause of the accident. When the accident occurs in the vehicular roadway of the street, the fact that defendant is traveling on the wrong side usually is but prima-facie evidence of negligence. *McElhinney v. Knittle,* 199 Iowa 278. In the particular case which we have here, the jury could properly take into account, as bearing upon the question,

the defendants' negligence, and also, upon that of plaintiff's contributory negligence, the point from which, the angle at which, and the portion of the street on which, defendants' truck was proceeding. Such matters might be considered as bearing on the question whether the driver, though he intended to go on the driveway, by his course and place gave no warning or indication of such intention. Nevertheless, the driver had the right to make, with proper care, a left-hand turn into the building, and to cross from the right-hand side of the street, and to turn and back into the building. He was required therein to exercise ordinary and reasonable care, not only toward persons and property in or approaching the vehicular roadway of the street, but toward those who were on or might reasonably be expected to be on or approaching the driveway-sidewalk, or in or emerging from the building. He was bound to know that persons and vehicles were likely to be in or emerging from the building, and that his course in approaching on the left-hand side of the street, or in a not to be reasonably observed or expected turning upon the driveway, might mislead or surprise them, and that the danger of injury there was great. Reasonable care, therefore, required vigilance, attention, and circumspection, refraining from negligently misleading or surprising or flipping course or turns, such careful control of speed as would enable the driver to make (and, as soon as danger appeared, vigilance in making), a quick stop. As the record on the subject is silent, we make no pronouncement on the question of duty or failure to give, or delay in giving, warning signals, further than to say that the duty in this respect also was to exercise reasonable care. Making the turn which the driver says he intended to make, while not *per se* negligence, was obviously attended with danger, and required from him a corresponding degree of vigilance. It might, according to circumstances, be an improper use of the sidewalk. Low rate of speed, independent of surroundings and circumstances, does not repel the charge of negligence. 42 Corpus Juris 967; *Maudsley v. Richardson*, 101 N. J. Law 561 (129 Atl. 139). Whether, in this case, the defendants' driver, in approaching the entrance to the building, in driving to and going on the sidewalk, was using the necessary precaution and exercising reasonable care was a question for the jury, wholly apart from the provisions of Section

5019. That section is not applicable to the evidence, and the instruction was misleading and prejudicial.

II. Defendants urge that it was the duty of plaintiff to have looked, before entering the driveway; so that plaintiff failed to prove that he was free from contributory negligence. The court gave instructions on the subject of contributory negligence, to which no objection is here made. Plaintiff was lawfully on the sidewalk-driveway; defendant's truck was approaching from the southeastwardly. There is no direct evidence as to whether or not the driver signaled his approach. That the driver's purpose was to go on the sidewalk-driveway is not shown to have been apparent. It does not appear that plaintiff did not look, or if he had looked, that he would have known, or known in time to have avoided it, that the truck was coming up on the sidewalk, or that the driver was proposing to enter the building or use the sidewalk-driveway for making the turn. The driver himself says that he was not proposing to enter the building directly, but to turn and back in. The angle of approach and the appearance of the truck, as observable from plaintiff's position, cannot be said to have been such as conclusively to make it appear that the truck was going to be driven on the sidewalk, much less that plaintiff's position or movement was not one apparently of safety. Plaintiff was not bound to anticipate negligence of the driver. It was for the jury to say whether the plaintiff was guilty of contributory negligence, as well as whether defendants were negligent.

III. Complaint is made that no instruction was given as to whether or not the place of the accident was strictly a driveway or sidewalk. It was a part of the public street, which any of the public, in the exercise of reasonable care and prudence, had the right to use. Pedestrians had the right to walk over it, and drivers of trucks had the right to drive over it,—at least in entering and leaving the building. It was not exclusively for the use of pedestrians or of vehicles. The rights and duties of the parties are not dependent on the name given to the place. It was not for the court to christen it one or the other. It was, for proper purposes, both driveway and sidewalk.

IV. Defendants argue that the evidence fails to show that

plaintiff sustained permanent injury primarily caused by the accident. Plaintiff (at time of trial 52 years old), when 8 years old, sustained an injury to one of his kidneys, by reason of which he was confined to his bed for about four years. It appears that, for years before 1924, the kidney had not functioned, and plaintiff had suffered pain and ill health. In 1924, the kidney and tonsils were removed. The evidence is that plaintiff thereafter improved in health. The permanent injury which he claims to have sustained from the accident is to one of the sacroiliac joints. Examination made soon after the accident revealed no evidence of external bruises in that region; but plaintiff says that from the time of the accident he had pains in his back. The examination of physicians tended to show tenderness and injury there, though plaintiff's physician says that there was no such tenderness before the accident. A skiagraph taken about twelve days after the accident showed slight signs of lipping of the joint. ''Lipping is an outgrowth on the margin of the bone.'' The evidence is to the effect that lipping would not appear twelve days after an injury, and that it is usually the result of infection; that it can be caused by an acute inflammation, and an acute inflammation can follow an injury to the joint. A skiagraph taken several months after the injury showed an increase of lipping. There is testimony ascribing this increase to the injury, and that ''there is a definite injury to the joint, shown by the localized pain and the limitation of the motion in the motion of the legs, causing pain, and also by pressure on the leg, causing pain over that particular joint.'' There is evidence that, after the accident, plaintiff lost weight, was unable to stand long, was weak, was unable to lift small objects, and suffered pain in walking. The sacroiliac joint is normally an immovable joint, and to immobilize it, plaintiff, since the injury, has worn bandages. His family physician testifies that, in his opinion, the injury is permanent, and pain will be produced by any extensive movement of the joint. The extent of plaintiff's injuries, whether at all and the extent to which they resulted from the accident or from previous infections, whether plaintiff's ill health resulted from his injuries or from his previous condition, or was a continuance thereof, and the proportion, if any, of his ill health, suffering, temporary and permanent condition attributable to the accident,

whether his injuries were permanent, and the extent thereof, were questions for the jury, under proper instructions. We may say, however, that the court should have instructed fully upon these elements of alleged damage.

V. The court, in its instructions, in reciting the plaintiff's allegations, included some matters which were wholly unsup-, ported by the evidence, and which were not otherwise submitted to the jury for their determination. We have frequently disapproved of this practice. It is sufficient to say, in view of a new trial, that the statements of plaintiff's allegations should be confined to those to sustain which there shall be evidence sufficient for submission to the jury. *Granette Prod. Co. v. Arthur H. Neumann & Co.*, 208 Iowa 24; *In re Estate of Dolmage*, 204 Iowa 231; *Veith v. Cassidy*, 201 Iowa 376.

VI. Plaintiff had been in the insurance business, but had sold out, and taken up a mercantile business two or three weeks before the accident, nine or ten months before the trial. The insurance business had been conducted by a partnership (plaintiff and another), which "got a commission on everything that was done by the agents in twenty-five counties." Plaintiff was permitted, over objection, to testify that, at the time of the trial, he thought he would engage in the insurance business again, and to testify to his previous earnings in that business. There was no suggestion that before the accident he was intending to go back into the insurance business, or that the accident prevented him from engaging in and therefore from earning his ordinary income in that business. The business apparently had been wholly terminated. That at the time of the trial he thought he would re-engage in the insurance business would have no tendency to prove that he had, by reason of the accident several months before, been damaged in his earning power in such business. Moreover, evidence of his former earnings would afford no basis for his future earnings in a business which he would have to purchase or establish,—a business in which he might or might not form another partnership with the same or another person. Re-engaging in the business would involve the purchase of a new business of a wholly conjectural nature, or the establishment of a new business. It would involve the forming of con-

nections with the same or other companies, with the same or other agents, in the same or different territory, and engaging in the same or different lines. It would involve the price to be paid or waiting period to be endured, the extent to which the field would then be occupied, ability to recover former customers and acquire new ones, amount of capital required and amount available, diligence, help, and other matters, all of which would be not only too hypothetical and conjectural to form any basis for measuring probable future earnings, but wholly impotent to show what, if anything, he had lost by the accident. The evidence was misleading, and should not have been received. See *Hubbard v. Town of Mason City*, 60 Iowa 400; *Boston & Albany R. Co., v. O'Reilly*, 158 U. S. 334.

VII. Defendants argue that the verdict is excessive; also, that there was misconduct of counsel in the examination of a juror by asking questions which were intended to give the jury the impression that defendants carried liability insurance; also, that one of the jurors was guilty of misconduct in visiting the place of the accident; also, that there was error in not issuing citation to jurors who made affidavits in resistance to motion for a new trial, to appear for cross-examination. As new trial is to be granted, we think it would be inadvisable for us at this time to express an opinion as to the amount of the verdict, if any, to which the plaintiff may be entitled. We have recently discussed the question of misconduct of counsel in the respect mentioned in *Miller v. Kooker*, 208 Iowa ——. Many questions raised in appellants' argument may be avoided altogether in the further progress of the case. Some are largely matters of verbiage. Others are not likely to recur on new trial.—*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.