LEE WHITMAN, Administrator, Appellee, v. JAMES PILMER et al., Appellants.

No. 40741.

462

DECEMBER 16, 1931.

REHEARING DENIED APRIL 8, 1932.

C. C. Putnam and Guy S. Calkins, for appellants.

Lehmann, Hurlburt & Hossfeld, for appellee.

MORLING, J.—Intestate's residence was on the west side of Seventh Street, near the middle of the block. The public sidewalk, which was six feet wide, was nearly 17 feet east of the house. East of the sidewalk was a 10-foot, 4-inch parking. The paving east of the curb was 32 feet wide. On the south side of the house was a driveway 9 feet, 6 inches in width. The accident occurred about 2:30 in the afternoon of September 1, 1928. At that time the car of decedent's son was parked next to the west curb of the street and north of the driveway. North of this car were parked one or more other cars. The car of Mrs. Lamoreaux was parked against the east curb opposite the Whitman house. Decedent left her house to cross the street and get in the Lamoreaux car. Decedent's son Charles, who was standing in a front door of decedent's home, testified:

"She stepped into the driveway and walked out to the street. As she did so she was on the north edge of the driveway and turned her head and looked up and down the street. My car was parked above the north edge of the driveway. She walked in front of it, looking to the north first and then to the south. A car was coming from the south. Mother stood and let that car go by from the south and started to walk across the street, and was almost to the center of the street when someone screamed. It was Mrs. Pilmer who screamed. I first saw the car Mrs.

Pilmer was driving when it passed in front of my view almost opposite where I was standing. * * * She (the decedent) went practically straight east, and the best of my opinion mother had reached the center of the street. * * * was slightly past the center of the street to the best of my knowledge, and I would say Mrs. Pilmer's car was 16 to 22 feet from her when I heard the scream. * * * I would say she wasn't going over 20 miles an hour. Her car continued on south after I heard the scream. It struck my mother. It had not slowed up any in the interval. The brakes had never been applied in the interval. The bumper of the car struck mother on the right leg. My mother threw her arm out, hitting the left lamp and the side of the radiator with her arm. * * * It was the left end of the bumper that hit her. * * * She was past the center of the car when she was struck. The car went on I should say 10 or 12 feet before the brakes were applied, and when the brakes were applied the car stopped immediately. * * * My mother waited for a car to go by going north. * * * No other car went north until after the accident. * * * I have no idea how many people were in the car that went north before the accident. I was watching my mother to see if she saw that particular car; she was waiting for that car to go by. I saw her stop and watch the car. * * * My car was very close to the curb. If parked exactly against the curb it would be 5½ feet out in the street; the fenders would. My mother stepped somewhere from 2 to 4 feet out in the street. * * * The best of my knowledge is she was past the center of the street (when struck) I would say one-half the width of a car east of the middle of the street. * * * Had my mother taken one more step she would have been entirely out of the way. * * * I couldn't swear and don't want to swear that the scream came from Mrs. Pilmer, but rather that it came from that direction. * * * To the best of my judgment she (mother) was in the same place she was struck after the scream and didn't take another step. She stopped and turned around to the north. She turned to her left and went to look west and the car struck her at that time. * * * the bumper caught her in the right leg. * * * From where I stood I could look to the southeast over my car by the tree and by the pole and actually saw her hit the left or east lamp, east side of the car. * * * As she turned to the left she put her right leg to the north evidently because

that it (is) where the car hit her on the right leg on the side. * * * She hit on the left * * * side of the car, the left lamp and fender. I didn't know the right lamp was bent and the left wasn't bent at all. * * * As she stepped out there 2 or 3 or 4 feet from the end of the driveway and stood still she looked north first, and then to the south. That is all I saw her look until she started across east. There was a car that went by her from the south going north. As soon as that car had gone north she started on across the street. * * * There is a space of 7 or 8 feet between the north side of our house and the south side of the house immediately north of us. When I first saw the Pilmer car it was approximately in line with that house, the south side of that house. * * * I do not know how far from my mother the Pilmer car was when she looked to the north, nor where the Pilmer car was when my mother stopped before she looked either north or south.''

Mrs. Pavlik, who was looking out of a window of the next house south, testified:

''My attention was attracted to the street by hearing a lady scream. * * * When I heard the scream and looked Mrs. Whitman was a little over half ways across the street. The east side of the automobile struck her. She was then about even with the driveway. * * * When the automobile came to a stop and the accident was over, Mrs. Whitman was south of me almost even with my car, in front of my house. * * * The driver of the car, after she screamed, threw her hands in the air and screamed again. Q. Did you see her hands in the air? A. Well, as to that, I wouldn't want to say just to that. * * * I was talking to this woman just as they had taken Mrs. Whitman in and I says, 'Why didn't you run into the pavement, into the curbing, or into some of these cars?' She said, 'All I could do,—I saw I was going to hit her,—I threw my hands in the air, screamed, closed my eyes and set my brakes. I didn't want to ruin my new Buick car.' * * * I saw the car before it hit her. Mrs. Whitman wasn't exactly across the street but she was going across to get in the car. * * * I just couldn't say how far away the car was when I saw it going towards her after I looked up, having heard the scream, because everything was done so quick. * * * The first was a scream. I wouldn't say whether the next

time was a screech of a brake or scream. At that time I should judge she was about 2 feet over the middle of the street. * * * The east side of the car hit Mrs. Whitman. * * * I could see clearly it was the east side. * * * I saw the car drag her down the street 20 feet. I couldn't say as to whether she was fastened in some manner on the left or east side of the car. All I know she was being pushed or drug down the street ·about 20 feet.''

Mrs. Lamoreaux (who crossed the street a short distance behind decedent) testified:

''I saw a car * * * coming from the north and by the time I reached the edge of the street it was about 18 to 20 feet from being directly even with me. It was north of me. Mrs. Whitman was at least in the center of the street, a little past perhaps. The car driven by Mrs. Pilmer did not sound its horn. While I was looking I heard an outcry and saw Mrs. Pilmer. She seemed startled and gave a cry and sort of jerked herself. She was then I would say 18 feet from Mrs. Whitman. Her car did not stop then. When she gave the outcry Mrs. Whitman turned, put out her hand and gave a push as though she saw the car was going to hit her. The east side of the car struck Mrs. Whitman. The bumper struck her right knee, and her hand struck the lamp on the right-hand side * * * It would be the left-hand side of the car. After the car struck Mrs. Whitman it sort of pushed her. She kind of hung over the car and it went on with her and didn't stop right away, and when it did stop she fell on the paving. And when everything came to rest she was some distance in front of the car, 6 or 7 feet, quite a bit south of the Whitman place; and Mrs. Pilmer's car came to a stop south of the Whitman driveway, practically in the middle of the street, and Mrs. Whitman was a little east of the center. The car did not slacken its speed between the time I heard Mrs. Pilmer cry out and the time .it struck Mrs. Whitman. I would say the car pushed Mrs. Whitman after it struck her 15 or 16 feet. * * * When Mrs. Whitman was in the street and just before she was struck there was room for a car to go to the west of her without striking her and between me and Mrs. Whitman. * * * I said the Pilmer car was coming south practically in the center of the street. It is true I judged that hurriedly at the time and with

cars parked upon each side. * * * I was waiting for the Pilmer car to come by.''

This witness further testified:

''I did not yell at Mrs. Whitman. I didn't think she was in any danger whatever. There was quite a space in between. I thought she would easily get over. * * * There was room for a car to come between me and Mrs. Whitman without striking anyone.''

Witness W. H. Shuey testified:

*'Approaching the place where the accident occurred, I saw a woman coming out of a driveway going east toward the street, and saw a car coming from the north and about the time the woman was ready to enter the street from the driveway I told Mrs. Shuey, that woman is going to get hit. She was looking at me or looking my direction. * * * I was afraid that if I would honk my horn I would further distract her attention. * * * There was a car or row of cars parked which she had to step out from behind, and I had hardly time to say anything until she stepped out and just as she cleared the car the car from the north hit her. It looked to me almost as though she walked into the car, it happened so quick. * * * Mrs. Pilmer * * * was on the west side of the highway * * * As the lady stepped out from in front of the automobile the momentum of the car immediately ceased. * * * The car did not in any manner drag, push or shove the injured lady. * * * At the time of the contact Mrs. Whitman's face was turned southeast. * * * And when I stopped there was just 26 steps between the front of Mrs. Pilmer's car and mine. I did not pace it off then. That is the result of pacing the other day. * * * When I first spoke to my wife this lady I saw was just about to the curb line going eastward. As she walked eastward in front of the car near the curb facing the south, she was not entirely visible to anybody coming from the north. I thought she was going to walk into the side of the car. * * * when I first saw the car coming toward me I decided I would have to meet her,—pass her, then she pulled over to her right and about that time I saw the woman step into the driveway or into the street. At no time

after I saw her step into the driveway did I see her look to the north.''

Mrs. Pilmer testified:

''I had just shifted gears and started on when somebody stepped from in front of three cars parked along the west side of the street. I had no time to do anything but shove on my brakes as quickly as possible, and I did that. When I shoved in the brakes it did push me a little bit forward and I saw Mrs. Whitman turn around,—her back was turned to me. I was facing the south. At no time did she even look or see my car. Some way she struck and fell around over my right lamp. * * * At the time of the accident I was at no time in the middle of the street. I was toward the west. * * * I did not at any time scream. Just prior to the time of the accident my car was going about 15 miles an hour. * * * I was at all times on the west side of the center of the street.''

Mrs. Shuey testified:

''* * * Mr. Shuey attracted my attention to the woman coming from the house and down the driveway. She was facing us and looking at us coming from the south. A car was coming from the north and he attracted my attention, said, 'That woman is going to get hit; I'd honk my horn, if I do she wouldn't have a chance to look the other way.' * * * The car that was coming from the north was, I would say, neck and neck with this car that was parked there at the curb * * *. She did not at any time as I observed her there look to the north. * * *.''

Plaintiff's claim is that defendants' car was being driven on the east, or left, side of the center of the street. If so defendants were not thereby *per se* guilty of negligence. Dickeson v. Lzicar, 208 Iowa 275. Decedent and defendants had equal rights in the use of the street, subject to the duty of each to exercise reasonable care. Id. McElhinney v. Knittle, 199 Iowa 278. There is no claim that defendants' car was being driven at a negligent rate of speed. Decedent was about to cross the street in the middle of the block and was required to use care accordingly. Livingstone v. Dole, 184 Iowa 1340, 1345. Defendants' car at that time, according to the son's testimony, was passing

almost opposite where he was standing in the door of the house. This is not out of harmony with the other testimony. Decedent's view as she was stepping into street was obstructed by the parked cars. The son testifies that decedent walked in front of his parked car and 2 to 4 feet out into the street, looking to the north first and then to the south; that she stood and let the car from the south go by. It does not appear that when she looked up the street her view was unobstructed, or that after the car from the south passed she again looked north. When she got in position to see, if she did not look to the north for approaching cars, she was guilty of negligence. If she did look, and if her view was not obstructed, she must have seen defendants' car within a few feet of her and was negligent in crossing the street in front of it. The circumstances seem to call for the conclusion as inevitable that decedent did not look when she was in position to see. Plaintiff in his petition claimed under the last clear chance rule. That issue, however, was withdrawn from the jury, and stands here as having been thereby ruled against him, and not before us for consideration. Defendants asked for directed verdict in their favor, on the ground, among others, that decedent was guilty of contributory negligence as matter of law. The motion should have been sustained. This conclusion renders it unnecessary to consider other phases of the case.—Reversed.

FAVILLE, C. J., and EVANS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.

STEVENS, ALBERT, and KINDIG, JJ., dissent.