MILAN C. MILLER, appellee, v. McCOY TRUCK LINES, INC.,
et al., appellants.

## No. 47993.

(Reported in 52 N.W.2d 62)

MARCH 4, 1952.

Hart & Hart, of Elkader, for appellants.

Geiser, Donohue & Wilkins, of New Hampton, and Traeger & Anderson, of West Union, for appellee.

HAYS, J.—This action is to recover damages on account of personal injuries and property damage sustained when plaintiff's automobile collided with a tractor and semitrailer owned by the McCoy Truck Lines, Inc., and being driven by its employee, Elmer F. Uetz. There was a verdict and judgment for plaintiff and both defendants appeal.

The collision occurred about 6:45 p.m., March 8, 1950, on U. S. Highway No. 18, about seven miles east of Fredericksburg. It is a paved highway and at the place in question runs east and

west. Shortly prior to the collision, Uetz, driving the tractor outfit, which had an over-all length of 44 feet and, as loaded, an over-all weight of 44,000 pounds, was proceeding west on said highway. He overtook another McCoy truck parked on the north shoulder due to fuel trouble. About 100 rods east thereof was a gasoline service station. Uetz decided to go back to this station for assistance and proceeded west on the highway looking for a place to turn around. Some 1326 feet west he saw where private driveways into the fields adjoining the highway intersected therewith, one to the north and one to the south. He pulled to the left side past the driveways facing west, cut trailer back into south driveway, and started to back into it. At this point there is an unobstructed view of the highway to the west of 1554 feet, to the top of an incline on the highway. At the time Uetz started to back the tractor and semitrailer no oncoming cars were visible from either the east or west. Uetz testified that after starting the backing operation he again looked to the west and saw the lights of plaintiff's car approaching about 500 feet to the west. When it was 200 feet away he flashed his headlights. He estimates plaintiff's speed at 50 miles per hour. At the time of the collision the tractor and semitrailer blocked the entire pavement and shoulder and driveway to the south for at least 10 to 15 feet. From the front or north end of the tractor to the north edge of the shoulder it was a distance of about 10 feet. Uetz further stated that at all times the lights on the rear of the trailer, as well as the sidelights, were lighted and that after flashing his headlights he blinked the sidelights several times.

The record shows that plaintiff, driving a 1938 Chevrolet automobile, was driving east on the highway. While darkness had fallen, the night was clear. The brakes on his car were in good working order, and, as he approached the site of the collision at about 45 miles per hour, he was using his bright headlights. At a point about 400 feet from the site of the accident he observed lights which appeared to be from an oncoming car on its right side of the highway. He dimmed his headlights and the other headlights were dimmed or flashed. When about 75 feet away he saw the trailer directly across the pavement. He applied his brakes but was unable to stop and the collision occurred.

I. Appellants assert error of the trial court in overruling their motion for a directed verdict for the reasons that the evidence fails to establish negligence of the appellants; and shows contributory negligence as a matter of law. We will consider these two propositions together, as they are so closely interwoven.

Appellants contend that under section 321.314, Code of 1950, they were authorized to turn their vehicle on the highway, and violated no statute in so doing. In Harmon v. Gilligan, 221 Iowa 605, 266 N.W. 288, it was held that the purpose of section 321.314 (5032, Code of 1931) was to enable the driver of a car following to gauge his speed accordingly. We do not deem it applicable here. It may be conceded as an abstract proposition that turning a vehicle around on the highway is not in itself a violation of the general law of the road. Assume, as appellants contend, that section 321.314 is applicable. It provides in part: "No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety." Under this record we have a vehicle, with an over-all length of 44 feet and weighing 44,000 pounds, attempting, after nightfall, a complete turn around on a main highway at a point where the unobstructed view of the highway is limited to 1554 feet. It was an operation that required from two to five minutes to execute. It is common knowledge, especially to one continuously upon the highways as was appellant Uetz, that a speed of 50 to 60 miles per hour is very general. Under such a factual situation it is clearly a fact question for the jury to determine as to whether such a turn could be executed with reasonable safety and whether or not appellant Uetz in attempting same acted in reasonable and prudent manner under the circumstances.

Appellants further contend that under the record appellee was guilty of contributory negligence as a matter of law. Such claim has no merit. Appellee is entitled to the most favorable view of the evidence. This is that appellant's headlights were so located that they imparted the belief that a car was approaching in its own lane on the highway. It is not to be anticipated that a user of the highway will, with his vehicle, create an absolute barrier across the traveled portion thereof. This case comes squarely under the rule announced in Central States Electric Co. v. McVay, 232 Iowa 469, 5 N.W.2d 817; Knaus

Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N.W.2d 204. It was a question for the jury.

II. It is urged by appellants that the trial court erred in the admission of testimony. Only by turning to the record and to the reference to same by page and line number in the brief and argument can we ascertain the nature of this assigned error. We wish to call attention to Rule 344(4), Rules of Civil Procedure.

 Dr. Bruce E. Douglas of the Mayo Clinic, Rochester, Minnesota, was called as a witness by appellee. He stated he had personally examined appellee during the time he was at the Mayo Clinic and stated generally the nature of his injuries. The record then shows the following:

"Q. Doctor, you stated with reference to the chest injury—— will you try to relate to the jury the exact nature of that injury as shown by your examination? A. May I ask, in same examination do you include also laboratory assistance, also X-rays? Q. What your information is, yes.

"Mr. Hart: We object to that as hearsay, calling for conclusion not based on examination, not binding on the defendants.

"The Court: Well, the witness may answer this in his own way as to what techniques he used in his examination. Proceed.

"A. As I mentioned, our examination disclosed a depression of the breastbone which was assumed on the basis of physical examination to represent fracture of this bone. This was confirmed by X-ray examination. The airlessness of the right, of the lower part of the right lung, which we suspected on performing physical examination, was also confirmed by X-ray examination."

There was no motion to strike this testimony. Other instances raising the same general question are also questioned.

Appellants cite four decisions of this court as controlling. Elzig v. Bales, 135 Iowa 208, 112 N.W. 540; Switzer v. Baker, 178 Iowa 1063, 160 N.W. 372; Foy v. Metropolitan Life Ins. Co., 220 Iowa 628, 263 N.W. 14; and Ipsen v. Ruess, 239 Iowa 1376, 35 N.W.2d 82. The Elzig case is where a doctor was asked to state what appeared from a "skiagraph", which was not in evidence— held not the best evidence. The Switzer case is where the doctor had never personally examined the patient, and his testimony was

based solely on what the patient and others had told him—held inadmissible. In the Foy case, as also the Ipsen case, testimony of a doctor based entirely upon hospital records of which he had no personal knowledge was held to be inadmissible. In Hearn v. City of Waterloo, 185 Iowa 995, 1000, 169 N.W. 392, the attending physician testified to the extent of the injuries. On cross-examination he stated his diagnosis was confirmed by X rays taken by others. A motion to strike the testimony was overruled, the court stating that while defendant was entitled to have the opinion of the witness confined to his own examination, it was not entitled to have all testimony stricken because of the cross-examination.

Our attention has not been called to where we have specifically passed upon the exact question now before us. However, we think the sensible and correct approach to it is well-expressed in Sundquist v. Madison Rys. Co., 197 Wis. 83, 87, 221 N.W. 392, 393. There the doctor treating the patient in making his diagnosis relied in part on the records of regular hospital examinations made by hospital technicians, who were not called as witnesses. In permitting the testimony, the court said:

"In order to say that a physician, who has actually used the result of those tests in a diagnosis and in the treatment of the plaintiff, may not testify what that diagnosis was, the court must deliberately shut its eyes to a source of information which is relied on by mankind generally in matters that involve the health and may involve the life of their families and of themselves—a source of information that it is essential the court should possess in order that it may do justice between these parties litigant.

"In making a diagnosis for treatment physicians must of necessity consider many things that do not appear in sworn proof on the trial of a lawsuit—things that mean much to the trained eye and touch of a skilled medical practitioner. This court has held that it will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, *even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true.*" (Italics added.)

See also annotation in 175 A. L. R. 275, and authorities there cited.

We find no error in the submission of this line of testimony.

III. Error is assigned in the giving of instructions Nos. 1, 9 and 11, and in refusing to give requested instruction No. 5. Again we would call attention to Rule 344(4), R. C. P.

Requested instruction No. 5 stated, in substance, that the defendants have no duty or obligation to establish by evidence that they were not negligent or to prove that plaintiff was contributorily negligent, this burden being on the plaintiff at all times. The trial court in instructions Nos. 2, 6, 7, and 9 amply and correctly stated the law on this question.

In instructions Nos. 1 and 11 the trial court told the jury plaintiff alleged that defendant's truck was standing "crosswise" on the highway. Appellants assert that there is no evidence to sustain such a specification of negligence, as it clearly appears that during all the time in question the truck was in motion. There is some variance upon this question in the record, but be that as it may, if moving at all times the movement was extremely slow, and whether it be said the truck was stopped or slightly moving, when the general situation is considered, is of no momentous import, and could not have confused or misled the jury.

Instruction No. 9 deals with the various elements of alleged damage, and measure to be used in determining same. Only one division thereof do we deem necessary to consider and it deals with damages on account of loss of time, due to injuries sustained. In this connection the court stated:

"You will further consider and allow the plaintiff to recover such sum, *if any,* you find from a preponderance of the evidence, which will fairly compensate him for the total loss of time to date that he has lost as shown by the evidence, and in no event shall you allow him for loss of time * * * a sum in excess of $250 per month for such total disability."

The objection interposed is that there is no evidence of damage sufficient to warrant a submission of this question to the jury. The question raised is a troublesome one.

The record shows appellee testified, in substance, as follows:

"Thirty-three years old, have lived since June 29, 1950 * * * on a farm of 175 acres. March 8 to June 28, 1950, lived with my wife's folks. * * * Schoolteacher before that. * * * Taught 1946,

1947, 1948, and 1949. At Corning 1948 and 1949, head of Commercial Department and Junior-High football, basketball, and track coach. The last year I got $2900 for a nine-month year."

He further, stated that he was unable to work until in October. No objection to any of this testimony appears in the record. In his petition, appellee asks damages for loss of time at the rate of $250 per month. The record further shows that a pretrial conference was had and states as follows: "6. A review of the further claims for damages was made for the purpose of determining just which ones are in issue in this cause, and it was determined that the following are the only other items for which damage is claimed, to wit: * * * (2) Loss of time to date. * * *."

The record is far from satisfactory as to what the situation was on March 8, 1950, the date of the accident, as to appellee's business. From a question asked him, to wit, "Q. After the 28th of June you may state what work you did on the farm you had rented"—the inference may be drawn that he was farming—just when he started does not appear; neither does it appear whether on March 8, 1950, he was still teaching. As given us in the record, such an inference could well be drawn. He testified: "March 8 to June 28, 1950, lived with my wife's folks in Cedar Falls, Iowa. Taught 1946, 1947, 1948, and 1949." The time from March 8 to June 28, 1950 covers the time of the accident and subsequent hospitalization and convalescence. Also, appellants in their argument state that appellee testified "he made $250 a month as a teacher but did not intend to continue to teach, and it does not follow that a schoolteacher making $250 a month will make that at farming."

If we assume that appellee at the time of the injury was teaching and receiving $250 a month, then there is ample evidence of damage to warrant the submission of "loss of time."

If we assume that at the time of the injury he had quit teaching and was engaged, or intending to engage, in farming, we still are of the opinion that the submission of the question of damages for loss of time was not error. No authority to the contrary is cited by appellants. It will be noted that the trial court stated: "You will further consider and allow the plaintiff to recover such sum, *if any*, you find from * * * the evidence * * *." (Italics ours.) We have consistently held that the submission of

a nonproven element of damages will be deemed harmless when the instruction carries the limitation "if any." Gray v. Bean, 27 Iowa 221; Lamb v. City of Cedar Rapids, 108 Iowa 629, 79 N.W. 366; Fisher v. Bolton, 148 Iowa 651, 127 N.W. 979; White v. International Textbook Co., 164 Iowa 693, 146 N.W. 829; Hepker v. Schmickle, 209 Iowa 744, 229 N.W. 177.

The measure of damage for loss of time is the value of plaintiff's time due to inability to work. 15 Am. Jur., Damages, section 89; Amelsburg v. Lunning, 234 Iowa 852, 14 N.W.2d 680; Smith v. Pine, 234 Iowa 256, 12 N.W.2d 236. The limitation placed upon the amount of recovery is the amount stated in appellee's petition. In the absence of proof as to earnings at the exact time of the injury, evidence as to former earnings, as bearing upon his earning capacity, is proper. See authorities last above-cited, also annotation in 130 A. L. R. 173.

This case is not like those where the question of admissibility of proof of prior earnings is in question, as in Dickeson v. Lzicar, 208 Iowa 275, 225 N.W. 406, where it was held such testimony was not competent on what his future earnings in a new business might be. Nor, as in Hubbard v. Town of Mason City, 60 Iowa 400, 14 N.W. 772, where testimony as to average wages of farm hands, for two years prior to the time of the accident, was held inadmissible. We find no error in the submission of this question.

IV. Appellants assert a new trial should be granted on the basis of an excessive verdict. Appellee in his petition alleges special damages, such as damage to car and medical expenses (total being $1216), the sum of $25,000 for pain and suffering, loss of time, past and future, and future pain, suffering and medical expense. The jury awarded $18,787.

Without going into too much detail the record shows appellee was hospitalized for a period of twenty-eight days; that he sustained a fracture of the sternum and of the manubrium; the right lung injured; numerous cuts and bruises; that his condition was such that he was unable to work between March 8, 1950 and October 1950; he suffered severe pain; that he has a permanent partial disability. It is conceded that his hospital bills, including medical, exceeded $800, and damage to his car the sum of $400. Under this record we do not find anything to indicate the verdict was based upon passion or prejudice. It is a question in which

492

the jurors must necessarily rely on their own fair and unbiased judgment, and they having done so we are not disposed to interfere.

Booth v. General Mills, Inc., 243 Iowa 206, 49 N.W.2d 561, cited by appellants, is for damages on account of death and involves an entirely different rule in determining the amount of damages. It clearly is not in point.

While other errors are assigned, we have examined same and find no error therein.

Finding no error the judgment of the trial court should be and is affirmed.—Affirmed.

BLISS, OLIVER, SMITH, GARFIELD, MANTZ, MULRONEY, and WENNERSTRUM, JJ., concur.