## AMERICAN NAT. INS. CO. v. POINTS.
### No. 3129.

Court of Civil Appeals of Texas. El Paso.
April 18, 1935.

Rehearing Denied May 2, 1935.

.Brame & Brame, of Sherman, for appellant.

Webb & Webb, of Sherman (G. P. Webb, of Sherman, of counsel), for appellee.

W. B. Handley and C. J. Shaeffer, both of Dallas, amici curiæ.

PELPHREY, Chief Justice.

The statement appearing in appellant's brief is agreed to be correct and fair by appellee, and we shall adopt it for the purposes of this opinion.

"This suit was instituted in the 16th Judicial District Court of Grayson County, Texas, by the appellee, William Clyde Points, against the appellant, American National Insurance Company, on an insurance policy issued by appellant which insured the life of appellee for the sum of $2,000.00 payable on the death of appellee to appellee's wife as beneficiary and providing that in the event of the total permanent disability of the insured the insurer will waive the payment of premiums during the continuance of such disability and will pay to the insured the sum of $20.00 six months after receipt of due proof of such disability and a like sum monthly thereafter during the life of the insured and the continuance of his disability and providing that the insured shall at any time thereafter and from time to time but not oftener than once a year on demand furnish to the insurer due proof

of the continuance of such disability and if such proof is not so furnished then no further premiums shall be waived and no further income shall be paid.

"Appellee alleged that on January 6th, 1933, his left arm was crushed in between the flanges of two locomotive drivers and that as a result thereof he has lost complete use of said member and the effect of his condition causes him pain in other portions of his body as well as in said arm to such an extent that he will not be able to work and thereby he has received the total permanent disability set out in said policy. That at the time of his injury, he had a life expectancy according to the American Experience Table of Mortality of 34.63 years, that the value of money is three per centum, that the present cash value of the policy for $2,000.00 figured on money valued at three per centum and the principal discounted at the rate of three per centum compounded annually is $1,270.00, that there are eight monthly installments of $20.00 each which have matured aggregating $160.00 and the unmatured installments payable monthly aggregate the sum of $9,120.00 and the present cash value thereof is $5,800.00, that on or about April 24, 1933, appellant denied liability under said policy and denied that appellee had such injury or injuries or disability as to entitle him to any monthly income under said policy and has failed and refused to pay appellee or to waive the premiums becoming due after such alleged disability, that thereby appellant has repudiated said contract and appellee has employed counsel to represent him and that $2,500.00 would be a reasonable fee for their services.

"Appellant replied by plea to the jurisdiction alleging therein that under appellee's petition, if the allegations were true, he would only be entitled to recover the sum of $160.00 for eight matured installments with a refund of $50.50 covering an unwaived premium making a total of the sum of $210.50; that the allegation that appellee is entitled to the sum of $20.00 per month during 33.92 years can form no basis for the present suit as the policy makes no provision for acceleration of payments nor for the waiver of premiums the due dates of which have not matured; that appellee's claim for recovery of the face of the policy, $2,000.00 less compound interest at three per cent. for 33.92 years is not supported by any provision of the policy, there being no provision for the acceleration in the payment thereof but said policy specifically providing for the payment of said $2,000.00 only on receipt of due proof of the death of

the appellee which is not alleged to have occurred; and that the allegations are anticipatory and form no legal basis for a suit against the appellant.

"Appellant next urged by plea in abatement that appellee's petition alleges that the policy insured appellee on his life in the principal sum of $2,000.00 payable on his death to Beatrice Points, wife of the insured, as beneficiary named in said policy made a party to the suit, there is no allegation that said sum of $2,000.00 is due under the terms of the policy, and in truth and in fact no part thereof is due under the terms of said policy; that appellee alleges in his petition that he was injured on January 6, 1933, and the alleged disability following such injury was permanent and total, that said policy provides for the payment of $20.00 per month during the time of such permanent and total disability, said $20.00 payment to be made six months after receipt of due proof of such total permanent disability and thereafter a like payment monthly during the life of the insured and the continuance of the disability, that under the terms of such policy appellee only alleges the maturity of payments for eight months aggregating $160.00; that so much of appellee's cause of action, if any he has, which relates to the payment of monthly payments in excess of $160.00 are not due and form no basis for a suit; that there is no acceleration clause in the policy and the payment of such $20.00 monthly payments are contingent on his continued life and his total and permanent disability during such continued life; and appellant adopted and made a part of its plea in abatement the allegations in its plea to the jurisdiction.

"Subject to the action of the court on said pleas, appellant answered by general demurrer twelve special exceptions, a general denial, and by a special denial specially pleading the entire provisions of the policy with reference to waiver of premiums, life income to insured, and benefits for total permanent disability, alleged that appellant is informed, and believes, that appellee was injured on January 6, 1933, but specially denied that such injury has resulted in total permanent disability as that term is used in the policy of insurance, specially denied that appellee had furnished due proof of such total and permanent disability as is contemplated under the terms of the policy; specially denied that it is indebted to appellee in any amount under the terms of the policy and asserted that if it is indebted under the terms of the policy, such indebtedness does not exceed $210.50 which

is far below district court jurisdiction and that all payments under the terms of the said policy are contingent, and specially denied that appellee is ever given the right to collect the principal amount of said policy, $2,000.00, or any part thereof but said sum is payable only to the beneficiary after the contingencies mentioned therein have occurred.

"After hearing evidence thereon, the Court overruled the plea to the jurisdiction and the plea in abatement to which action appellant duly excepted. The court also overruled the general demurrer and all twelve special exceptions to which in each instance the appellant excepted. The case was tried to a jury and the Court, after overruling appellant's request for peremptory instruction, appellant's motion for instructed verdict, refusing appellant's special charges Nos. 1, 2 and 3, and requested special issue No. 1 and overruling appellant's objections and exceptions to the court's charge, appellant's exceptions in each instance being noted, submitted to the jury seven special issues which with the answers returned thereto by the jury are as follows:

"1. Do you find from a preponderance of the testimony that the plaintiff suffered an injury on or about January 6th, 1933, in the course of his employment with the Frisco Railroad? Answer: Yes.

"2. Do you find from a preponderance of the testimony that the plaintiff suffered total and permanent disability by reason of the injuries, if any, he received on January 6th, 1933? Answer: Yes.

"3. Do you find from a preponderance of the testimony that demand was made or caused to be made by plaintiff on defendant herein more than sixty days before suit and after proofs, if any, were furnished the defendant, that the defendant waive the premiums on his life policy and that he be paid twenty dollars per month for total and permanent disability, if any he had? Answer: Yes.

"4. Do you find from a preponderance of the testimony that the defendant American National Insurance Company has failed and refused to pay William Clyde Points any money by reason of his disability, if any? Answer: Yes.

"5. Do you find from a preponderance of the testimony that the defendant American National Insurance Company has failed to waive premiums on life policy on William Clyde Points? Answer: Yes.

"6. What do you find from a preponderance of the testimony to be the present reasonable per centum to be allowed for money due in the future? Answer: Three per centum.

"7. What do you find from a preponderance of the testimony to be a reasonable attorney's fee, if any, for representation of plaintiff in this cause? Answer: $2,000.00."

Appellant filed a motion to set aside the verdict and findings of the jury, which was amended, and an alternative motion for new trial, which was amended, both of which were overruled and notice of appeal given; the court having previously entered judgment in favor of appellee for $9,214, with 6 per cent. interest from the date of judgment. Appellant duly excepted in each instance. This case is on appeal on supersedeas bond duly filed and approved. Within due time, appellant filed certified transcript and duly authenticated Q. and A. transcript in the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, sitting at Dallas, Tex., and this case is before this court by transfer from said court.

## Opinion.

Appellant's brief contains 24 assignments of error and 22 propositions upon which it seeks a reversal of the judgment. They complain of the trial court's action in overruling its plea to the jurisdiction, plea in abatement, and general and special exceptions to appellee's petition; in excluding evidence of a physician as to what an X-ray showed; in stating in the presence and hearing of the jury that an offer made by appellant's counsel was the most foolish thing that the court ever heard in a courthouse, and that the court was disgusted and did not want to hear any more of counsel's foolishness; in rendering judgment for the anticipatory breach of the contract in the absence of pleading, evidence, or a finding that appellant had unconditionally refused to comply with the contract; in rendering judgment for 12 per cent. penalty and for attorney's fees in a suit of this character; in allowing interest on attorney's fees; in refusing to charge the jury that neither the impairment, nor the partial, nor the total, loss of appellee's left arm constituted total and permanent disability within the meaning of the policy involved; in refusing to submit the requested issue as to whether appellee, before default in any premium payments, furnished appellant due proof that he had become totally and permanently disabled by bodily injury so that he was permanently, continuously, and wholly prevented from performing any work for compensation, gain, or profit, or from following any gainful occupation, and that such disability had existed continuously for not less than 60 days; and in refusing ap-

pellant a new trial because of improper argument of counsel for appellee, and because of newly discovered evidence.

 Involved in a consideration of the trial court's actions in overruling the plea to the jurisdiction, the plea in abatement and the general demurrer; and in rendering judgment for the monthly sums to become due in the future under the policy, is the question of anticipatory breach of the contract by appellant.

The argument is advanced by appellant that, the pleadings being insufficient to show an anticipatory breach on the part of appellant, its general demurrer should have been sustained; that, there being no sufficient pleading to show a cause of action for the recovery of the monthly sums to become due, the amount remaining for which suit was brought (the monthly payments then due) was less than the amount necessary to give the district court jurisdiction; and that the suit should have been abated because the sum sued for was below the jurisdiction of the district court.

For like reason it is argued that the judgment as to such unmatured installments was erroneous.

The judgment is further attacked because of a lack of evidence and of a finding of the jury to an anticipatory breach.

Appellee, after pleading his injury, his total and permanent disability resulting therefrom, and that all premiums had been paid up to the date of the injury, alleged:

"That defendant on or about 24th day of April, A. D. 1933, denied liability under said policy, denied plaintiff's request and demand that the premiums be waived on said policy, and denied his request and demand for payment of monthly installments and denied that he had any such injury or injuries or that he was sick or disabled so as to entitle him to any monthly income as guaranteed him under said policy.

"That defendant from time to time thereafter renewed all of said denials of liability, and requested and demanded of plaintiff all premium payments which plaintiff paid under protest.

"He would further show to the court that defendant has denied all liability from the beginning and has failed and refused to pay the first payment due and has failed and refused to waive the premiums becoming due after the disability and after due proof of same had been filled out and mailed to said defendant. That it has failed and refused to recognize the plaintiff's right to any subsequent payment subsequent to the first payment. * * *

"That the defendant has breached each and every provision of its said contract. That the defendant has undertaken to and has repudiated said contract."

Appellee, as to breach of the contract by appellant, testified:

"Q. Did you have any conversation, or conversations, with a Mr. LaFlore? Or with anyone in his presence at any time, concerning your claim for compensation from the American National Insurance Company? A. Yes, sir.

"Q. At any time after you made this claim, did you have any conversation with him or with anyone here in his presence, concerning whether or not the company would or would not recognize the claim? A. Yes, sir.

"Q. Tell what happened please, sir?

"Q. Well, where did that conversation occur? A. At my house.

"Q. Did Mr. LaFlore introduce you to the gentleman? A. Yes, sir.

"Q. To whom did he introduce you? A. To the Claims Adjuster.

"Q. In Mr. LaFlore's presence, did you talk to the Claims Adjuster, or have a conversation with him? A. Yes, sir.

"Q. What did the Claims Adjuster say to you?

"Q. Did he say he would or would not recognize that claim? A. He said he would not, said he could not.

"Q. Said he would not and could not? A. Yes, sir.

"Q. Now did you ever go to the office of the American National Insurance Company, Sherman, Texas, with reference to your claim? A. Yes, sir.

"Q. How many times? A. Oh, about two, or three times.

"Q. After your injury did you mail or have mailed, or send or have sent, to the local office, this policy itself? A. Yes. * * *

"Q. Well, after that did you ever receive the policy again? A. Yes, sir.

"Q. Who delivered it to you? A. I went up to the office and got it.

"Q. Who gave it to you up there? A. A Miss Gladys.

"Q. In connection with that did they give you any letter? A. Yes, sir.

"Q. Now, is that the letter (handing the witness a letter)? A. Yes, sir."

Pertinent portions of the letter which was introduced in evidence read:

"Enclosed is the above mentioned policy which you may deliver to the insured, advising him that on the proofs it does not appear that he is totally and permanently disabled so that he is, and presumably will be, permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation. Therefore regret that we are unable to approve this claim at this time.

"However, if the insured's condition becomes such as to render him disabled as set out in the policy, and proof to that effect is submitted, we will be glad to give the matter further attention."

This letter was written on appellant's stationery, was addressed to M. F. La Flore, assistant superintendent, Sherman, Tex., and was signed by J. R. Sayres, claim adjuster.

We have concluded that the pleadings above quoted were sufficient, as against a general demurrer, to show a repudiation of the contract, and that the court properly overruled the general demurrer, plea to the jurisdiction, and plea in abatement.

We do not find, however, sufficient evidence in the record to establish such a repudiation as to constitute an anticipatory breach of the contract by appellant.

The evidence above set forth shows, at most, a refusal to pay the monthly installments and to waive the payment of future premiums, and does not deny appellant's liability under all circumstances. The letter, which appellee himself introduced in evidence, not only does not repudiate the contract, but expresses an intention to comply with its terms.

Under this state of the evidence, the trial court erred in awarding damages in any amount for the anticipatory breach of the contract, and for that reason the judgment must be reversed and the cause remanded. Aside from the question of the sufficiency of the evidence, the judgment cannot be sustained in the absence of a finding by the jury that such breach occurred. American Bankers' Insurance Co. v. Moore (Tex. Civ. App.) 73 S.W.(2d) 620.

■ Appellant's exception to appellee's petition because of the allegations therein as to his life expectancy was properly overruled. The petition contained an allegation as to his life expectancy independent of the allegations relative to the mortality tables. Under appellee's theory of an anticipatory breach, the question of the duration of his life was pertinent. Appellant's contention, that the allegations that appellee's life expectancy according to the mortality tables was 34.63 years was subject to exception because the tables, having been computed upon averages of those in good health, could not be used as a basis for determining the life expectancy of one who was totally and permanently disabled, is without merit.

Mortality tables have been held admissible in cases where it was shown that the person whose life expectancy was in question was in poor health. Galveston, H. & S. A. Ry. Co. v. Leonard (Tex. Civ. App.) 29 S. W. 955 (writ refused); Pecos & N. T. Ry. Co. v. Williams, 34 Tex. Civ. App. 100, 78 S. W. 5; Sanders v. Universal Life & Accident Ins. Co. (Tex. Civ. App.) 74 S.W.(2d) 301.

The contrary holding in Huey v. American Nat. Ins. Co. (Tex. Civ. App.) 45 S.W.(2d) 340, does not meet with our approval.

In Galveston, H. & S. A. Ry. Co. v. Johnson, 24 Tex. Civ. App. 180, 58 S. W. 622 (writ refused), the introduction of mortality tables was objected to on the ground that they had no reference to the probable duration of life of the class of men to which deceased belonged, locomotive engineers. It was shown that the companies making up the tables considered their occupation too hazardous and would not insure them. The court there held that the objections urged went more to the weight than to the admissibility. In our opinion, the same can be said of the contention here. There was no error in overruling the exception.

■■ The weight of authority seems to be that X-ray photographs, like ordinary ones, are the best evidence of what is shown by them, 22 C. J. § 1245, p. 992, but there are decisions which hold that they are not admissible in evidence without an expert interpretation, while there are others holding that the opinion of experts as to what they show is the best evidence. See discussion, note, 77 A. L. R. 946.

X-ray pictures have been held to be admissible in Texas, and without requiring any expert explanation, 17 Tex. Jur. § 317, p. 736, and, therefore, we feel that we are safe in assuming that our courts adhere to the weight of authority. If we be correct in such assumption, then the X-ray photographs are themselves the best evidence, and appellant was offering secondary evidence as to what they showed. Under such condition, would

appellant be entitled to make proof as to what they showed in the absence of the X-ray photographs, by proving that the X-rays were taken at a hospital outside the state of Texas, and that the owner thereof would not permit them to be copied in the institution or to be withdrawn for the purpose of copying? We have found no Texas cases directly in point, but have read numerous ones on the question of evidence of what is shown by such photographs in the absence of the photographs themselves.

The Supreme Court of Iowa, in Daniels v. Iowa City, 191 Iowa, 811, 183 N. W. 415, held that the trial court properly refused to permit an expert to testify as to what appeared in X-ray photographs of an injured leg of plaintiff. The photographs were not accounted for. The court based its holding upon the ground that no prejudice resulted, and said that they appreciated that too strict an application of the best evidence rule as applied to X-ray photographs was not desirable.

In Patrick & Tillman v. Matkin, 154 Okl. 232, 7 P.(2d) 414, 416, the Supreme Court of Oklahoma held that evidence by an expert that an X-ray photograph showed a fracture, the X-ray itself not being in evidence and not being produced, was improperly admitted. The hearing under review was one before the State Industrial Commission, and the court, after reviewing cases from Iowa and New York (Elzig v. Bales, 135 Iowa, 208, 112 N. W. 540; Marion v. B. G. Coon Const. Co., 216 N. Y. 178, 110 N. E. 444, 445), said: "We cannot lend our sanction to a rule permitting a witness to give evidence of what he found to be shown by an X-ray photograph not produced and not shown by competent proof to be a correct representation of that part of the body purported to be shown by it."

There was no showing in this case that the photograph itself was not available.

From a careful reading of the several authorities, we have reached the conclusion that the evidence of Dr. Woolsey as to what the X-rays revealed should have been admitted; the record showing that the photographs themselves could not be produced. Especially would this be true in view of the fact that Drs. Swofford and Rouse, witnesses for appellee, both testified as to what X-ray photographs of appellee's arm revealed.

Appellee's allegation that unless all payments were matured appellant would compel him to file monthly suits for his compensation was evidently an effort on his part to have the court assume jurisdiction of his suit in order to prevent a multiplicity of suits, and was not subject to the objection urged.

The exception to appellee's allegations that appellant had undertaken to and had repudiated its contract is also without merit.

The requested charge that neither the impairment, nor the partial, nor the total, loss of the use of appellee's arm constituted total and permanent disability within the meaning of the policy should not have been given. The question of whether or not the injury to appellee's arm constituted total and permanent disability was for the jury to determine, and the court could not say as a matter of law that the injury to the arm did not, as a matter of law, totally and permanently disable appellee.

The remaining questions will probably not arise on another trial, and will not be discussed.

Reversed and remanded.