84 N.Y.2d 639 (1994)
644 N.E.2d 1353
620 N.Y.S.2d 797
Jacqueline Schozer, Respondent,
v.
William Penn Life Insurance Company of New York, Appellant.
Court of Appeals of the State of New York.
Argued September 20, 1994.
Decided December 6, 1994.
Bleakley Platt & Schmidt, White Plains (Robert D. Meade of counsel), for appellant.
Kane Kessler, P. C., New York City (S. Reid Kahn and Lauren Topelsohn of counsel), for respondent.
Chief Judge KAYE and Judges BELLACOSA, LEVINE and CIPARICK concur with Judge TITONE; Judges SIMONS and SMITH dissent and vote to affirm in separate opinions.
*641 TITONE, J.
In this action to recover life insurance proceeds, we are called upon to determine whether the trial court properly barred the admission of an X-ray report, recorded by a physician as part of the underwriting process, and expert medical testimony concerning the physician's impression of the X ray, where the underlying X-ray film was unavailable at trial. Because the courts below improperly concluded that the best evidence rule establishes an absolute bar to the admission of that secondary evidence, without permitting defendant to establish any excuse for its nonproduction, we reverse and grant a new trial.
In October 1985, claimant Andrew Schozer applied for a life insurance policy with defendant William Penn Life Insurance Company. At that time, Schozer paid the policy premium for the first year and was issued a "conditional receipt." The conditional receipt offered claimant's beneficiary $100,000 in life insurance coverage, provided that claimant was found to be an acceptable health risk under defendant's "rules, limits *642 and standards."[1] The insurance company then embarked on an investigation of claimant's medical history.
Because defendant's underwriters believed that claimant's medical history raised some concerns about a potential heart condition that might have disqualified him from the coverage he sought, defendant requested that Schozer complete a physical examination and have an X ray taken. These procedures were completed on March 20, 1986 by one of defendant's authorized examiners, Dr. Sidney Dann. The X ray was sent to defendant's medical director, Dr. Walter Ploss, a radiologist, for analysis. Dr. Ploss concluded in a written report which lies at the core of this dispute that Mr. Schozer's cardiac-thoracic ratio[2] was "17.3/29.5." The numbers were followed by the letters "EH", a notation which, according to defendant, stands for enlarged heart.
On April 9, 1986, Schozer died from a cause unrelated to a heart condition. Since defendant had yet to finally accept or reject claimant's application for insurance at the time of his death, the terms of the conditional receipt govern the relationship between the parties. After claimant's death, defendant insurer rejected his application, and returned the premium paid.
In March 1988, plaintiff, decedent's wife, commenced this action against the insurer to recover the insurance proceeds available under the conditional receipt. Defendant disclaimed liability on the ground that Schozer had an enlarged heart at the time of his application which rendered him an unacceptable risk and thus uninsurable at the standard rate.
During discovery and trial, defendant could not locate the 1986 X ray taken by Dr. Dann, which it claimed had been transferred to a Kansas storage facility. In place of the X ray, defendant sought to introduce Dr. Ploss's testimony and his *643 written X-ray report to establish that Schozer's X ray would have revealed an enlarged heart. Defense counsel contended that an X ray is a writing subject to the best evidence rule, and because the X ray was lost  a fact sought to be proven through the testimony of the custodian of defendant's records  defendant should have been permitted to establish the contents of that lost writing by any competent secondary evidence. Plaintiff moved to preclude the evidence, advancing the claim that the best evidence rule sets up an absolute bar to the admission of secondary evidence in the absence of the original X ray.
Supreme Court permitted defendant to elicit testimony from its custodian of records concerning the X ray's loss outside of the jury's presence, solely to create a record for purposes of appeal. However, the court declined to pass on whether defendant's offer of proof on the efforts to locate the lost original was sufficient to establish the X ray's unavailability. Citing the best evidence rule, the court granted plaintiff's motion in limine to preclude defendant from introducing Dr. Ploss's X ray report and testimony absent the admission of the X ray. Because references to the X ray surfaced during the trial, the trial court instructed the jurors, over defense exception, that the X ray could not be located and that they should not "draw any inference from this ruling concerning the contents of the x-ray." Just prior to the close of trial, defendant located the X ray. However, the court refused defendant's request to permit its introduction. The jury returned a verdict for plaintiff in the amount of $100,000, which represented the face amount of the insurance policy, to which interest, costs and disbursements were added for a total judgment of $151,505.
The Appellate Division affirmed. Without advancing its supporting rationale, the Court held that the X-ray report was "inadmissible without the introduction of the underlying X ray" (197 AD2d 510). For the following reasons, we now reverse, and grant a new trial.
The "oft-mentioned and much misunderstood" best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven (Sirico v Cotto, 67 Misc 2d 636, 637; see also, Trombley v Seligman, 191 N.Y. 400; 57 NY Jur 2d, Evidence and Witnesses, § 247, at 496). At its genesis, the rule was primarily designed to guard against "mistakes in copying or transcribing the original writing" (Fisch, New York Evidence § 81, at 50 *644 [2d ed]). Given the technological advancements in copying, in modern day practice the rule serves mainly to protect against fraud, perjury and "inaccuracies * * * which derive from faulty memory" (ibid.).
Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence (Trombley v Seligman, 191 N.Y. 400, 403, supra; Fisch, New York Evidence § 81, at 49 [2d ed]; see also, Fed Rules Evid, rule 1004) and has not procured its loss or destruction in bad faith (Fisch, New York Evidence §§ 88-89, at 55-56 [2d ed]). Loss may be established upon a showing of a diligent search in the location where the document was last known to have been kept (see, Cole v Canno, 168 App Div 178; Dan v Brown, 4 Cow 483, 491; 57 NY Jur 2d, Evidence and Witnesses, § 262, at 518), and through the testimony of the person who last had custody of the original (see, Fisch, New York Evidence §§ 88-89, at 55-56 [2d ed]). Indeed, the more important the document to the resolution of the ultimate issue in the case, "the stricter becomes the requirement of the evidentiary foundation [establishing loss] for the admission of secondary evidence" (Harmon v Matthews, 27 NYS2d 656, 663, citing People v Dolan, 186 N.Y. 4, 13). In other words, the court should give careful consideration to the possible motivation for the nonproduction of the original in determining whether the foundational proof of loss was sufficient.
Such a mitigating principle is necessary since a strict requirement of the original writing would serve to extinguish otherwise valid legal claims or defenses where a party has, through no mischief or bad faith, lost or destroyed an original. As stated by one commentator, the failure to excuse the loss of an original "would in many instances mean a return to the bygone and unlamented days in which to lose one's paper was to lose one's right" (2 McCormick, Evidence § 237, at 76 [Practitioner's 4th ed]).
The courts of this State have applied this standard formulation of the best evidence rule and its exemption for "unavailable" originals with equal force to an unproduced X ray and the derivative evidence offered in its place to describe its contents (see, See Chang Chiu v Garcia, 75 AD2d 594; Sirico v Cotto, 67 Misc 2d 636, supra). In accordance with this framework, *645 the original X-ray film must generally be produced to prove its contents (Fed Rules Evid, rule 1002; see also, 5 Weinstein, Evidence ¶ 1001 [2] [01]). In treating an X ray as a "writing," New York's scheme parallels the formulation supplied by the Federal Rules of Evidence, which expressly include X rays in the definition of a "photograph", and in turn define a photograph as a writing subject to the original writing rule (see, Fed Rules Evid, rule 1001 [2]). Indeed, our application of the best evidence rule to X rays is not unique, but is symbolic of an approach followed in a number of States which have either drafted their statutory definitions of a "writing" to include X rays for best evidence rule purposes (see, e.g., NJ Rules of Evid § 801 [e], and 1994 comment; NC Gen Stat § 8-45.1; Ore Rev Stat § 40.550 [3] [Ore Evid Code, rule 1001 (3)]; Tex Rules of Civ Evid, rule 1001 [2]) or have judicially applied the best evidence rule to X rays (see, e.g., Hernandez v Pino, 482 So 2d 450 [Fla App 1986]; Daniels v Iowa City, 191 Iowa 811, 183 NW 415, 416 [1921]; Fuller v Lemmons, 434 P2d 145, 147 [Okla 1967]). An expanded definition of "writings" is employed in recognition of the fact that evidentiary rules concerning the admissibility of originals should be fashioned "with a breadth sufficient to encompass modern techniques for storing and retrieving data" (see, Hippard, Article X: Contents of Writings, Recordings, and Photographs, 20 Hous L Rev 595, 599, n 17).
As in the case of any other lost original, once the absence of an X-ray film is excused, all competent secondary evidence is generally admissible to prove its contents (see, American Natl. Ins. Co. v Points, 81 SW2d 762, 767 [Tex Civ App] [expert testimony of contents of X ray rendered unavailable because located outside State was admissible as secondary evidence of its contents]), provided that its admission does not offend any other exclusionary rule or policy (see, 5 Weinstein, Evidence ¶ 1001 [2] [01]). No categorical limitations are placed on the types of secondary evidence that are admissible. Nonetheless, the proponent of such derivative proof has the heavy burden of establishing, preliminarily to the court's satisfaction, that it is a reliable and accurate portrayal of the original. Thus, as a threshold matter, the trial court must be satisfied that the proffered evidence is authentic and "correctly reflects the contents of the original" before ruling on its admissibility (United States v Gerhart, 538 F.2d 807, 809 [8th Cir 1976]; see also, Marion v Coon Constr. Co., 216 N.Y. 178, 182). For example, when oral testimony is received to establish the *646 contents of an unavailable writing, the proponent of that proof must establish that the witness is able to recount or recite, from personal knowledge, "substantially and with reasonable accuracy" all of its contents (Richardson, Evidence § 599, at 596 [Prince 10th ed], citing Edwards v Noyes, 65 N.Y. 125; 2 McCormick, Evidence § 231, at 62 [Practitioner's 4th ed]). Once a sufficient foundation for admission is presented, the secondary evidence is "subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with [the] final determination left to the trier of fact" (Gerhart, 538 F2d, at 809, supra).
Placement of this heavy foundational burden on the proponent of secondary evidence to prove its accuracy as a derivative source of proof serves to reduce the dangers of fraud and prejudice identified by Judge Simons in dissent as the basis for his unconditional opposition to the receipt of secondary evidence of an X ray (see, dissenting opn, Simons, J., at 651). Indeed, those same dangers exist any time an original document is lost  even when the writing is a contract or lease  and a witness is called upon to recount its terms. In other words, the opponent is always at a disadvantage when cross-examining a witness about a lost document, but no valid reason exists to assume that some greater degree of mistrust should be placed on the loss of an X ray so as to warrant application of a different rule. Additionally, the proponent of secondary evidence will naturally be discouraged from introducing "less convincing secondary evidence" because "an opponent may cause the jury to draw an unfavorable inference from such a strategy" (Hippard, Article X: Contents of Writings, Recordings, and Photographs, 20 Hous L Rev 595, 611).
We reject the conclusion of Judge Simons in dissent and the courts below that Hambsch v New York City Tr. Auth. (63 N.Y.2d 723, 725) and Marion v Coon Constr. Co. (216 N.Y. 178, 182, supra) created an absolute best evidence rule bar to the admission of secondary evidence in the absence of an original X-ray film. In Hambsch, although the Court concluded that expert testimony should not have been admitted at trial without presentation of the underlying X ray, no best evidence rule objection was lodged and the Court's holding cannot be construed as addressing the issue (63 NY2d, at 725). Similarly, in Marion, the Court determined that expert opinion testimony should not have been admitted in the absence of the underlying X ray, but its holding rested ultimately on the *647 conclusion that there was no proper foundation to ensure that the missing X ray in fact portrayed the plaintiff's fracture (216 NY, at 182). Thus, the existing case law does not per se preclude a party from introducing secondary evidence of an X ray, if the necessary showing of unavailability is made.
Under the aforementioned guiding principles, the trial court erred in refusing to permit defendant to establish that the X ray was lost, and in ruling that the unavailability of the X ray unconditionally precluded defendant from introducing secondary evidence of its contents.[3] Contrary to the conclusion reached by our dissenting colleague Judge Smith, the fact that the X ray was found prior to the close of trial does not render the admissibility of the proffered evidence a question of limited importance (see, dissenting opn, Smith, J., at 652). That may have been true had the X ray ultimately been admitted into evidence. However, the trial court properly exercised its discretion in precluding admission of the X ray after all witnesses had testified and trial strategies had been fully executed (see, Zarrelli v Littauer Hosp., 176 AD2d 1181; Stern v Calzado, 163 AD2d 299), and the primary focus of our inquiry must remain whether the trial that defendant received was properly and fairly conducted. We conclude that the erroneous evidentiary ruling in this case so tainted the first trial that a new trial is warranted. Because of the procedural disposition of this case, we need not address defendant's remaining contention.
Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial granted.
SIMONS, J. (dissenting).
I would affirm.
In my view, the Trial Justice correctly denied admission of the doctor's report stating that decedent's heart was enlarged, because the X ray of the heart was not produced in court. The court's ruling was consistent with an unbroken line of New York decisions which hold that a doctor may not express an expert opinion of what an X ray shows unless the X ray is *648 before the court. We stated it most recently in Hambsch v New York City Tr. Auth.:
"With respect to the claimed fracture, plaintiff's physician testified that, based on his reading of an X ray of her lower back, she was suffering from spondylolisthesis, a misalignment of the vertebra. It was error to permit the doctor's testimony without producing the X rays and introducing them into evidence" (63 N.Y.2d 723, 725 [citations omitted]; see also, Marion v Coon Constr. Co., 216 N.Y. 178, 182; Ebanks v New York City Tr. Auth., 118 AD2d 363, revd on other grounds 70 N.Y.2d 621; See Chang Chiu v Garcia, 75 AD2d 594; Richter v Trailways of New England, 28 AD2d 737; Cellamare v Third Ave. Tr. Corp., 273 App Div 260; Gursslin v Helenboldt, 259 App Div 1064).
The rule also has been applied to opinions based on other medical evidence (see, e.g., Kosiorek v Bethlehem Steel Corp., 145 AD2d 935 [tissue slides]; Whalen v Avis Rent A Car Sys., 138 Misc 2d 959, 961 [CAT scans]).
The rule is based on the general proposition that witnesses must testify to facts not opinions and that expert opinions are permitted only because lay jurors are often unable to make an intelligent evaluation of facts without the assistance of experts possessing special knowledge to interpret them. Thus, an expert's opinion, when allowed, must be based upon facts before the court, either facts acquired by personal observation or evidence in the record which the expert has heard or which has been presented to the expert by a hypothetical question (see, Cassano v Hagstrom, 5 N.Y.2d 643; and see, Richardson, Evidence § 370 [Prince 10th ed]). Dr. Ploss did not personally examine decedent's heart. Thus, to be admissible his opinion had to find support from evidence in the record. Because the X ray upon which the opinion was based was missing, the record lacked the necessary factual predicate for admission of his opinion.
Defendant seeks to supply the missing foundation by substituting the doctor's report for the X ray. It contends, and the majority agrees, that under settled New York law it is entitled to offer the report as secondary evidence of what the X ray reveals. To support that statement, the defendant relies upon the brief memorandum in See Chang Chiu v Garcia (75 AD2d 594, supra), which stated ambiguously that the doctor *649 could not testify about matters shown in X rays not in evidence or "whose absence was not explained", dictum by the Marion Court (supra) and dictum by a Judge sitting in New York City Civil Court (Sirico v Cotto, 67 Misc 2d 636, 637-638). None of these decisions establishes a New York rule that secondary evidence may be received in cases involving missing X rays and, for the reasons stated below, we should not do so now.
As presently understood in this State, the best evidence rule requires that whenever a party seeks to prove the contents of a writing, the original must be produced or its absence satisfactorily explained (Richardson, Evidence §§ 568, 570 [Prince 10th ed]; Fisch, New York Evidence § 81, at 50 [2d ed]). The rule is designed to "reduce[] [the] danger of fraud and perjury and [eliminate] inaccuracies and errors which derive from faulty memory or mistakes in copying or transcribing the original writing" (Fisch, op. cit., § 81, at 50). Secondary evidence is permitted to establish the contents of a missing writing only if the absence of the original is excused (see, Richardson, Evidence § 568 et seq. [Prince 10th ed]). Before today, no New York case cited to the Court has extended the rule to X rays.[*]
The majority would do so, however, and permit secondary evidence in the form of the expert witness' report to the client to establish what the X-ray pictures show. I disagree with that result because, unlike the reproduction of the terms of a lease or a contract, a doctor's report or testimony is not a "copy" of the X ray and does not purport to be an objective statement of what the X ray shows. It is an expert opinion interpreting the X ray on the basis of the witness' experience and training. Inasmuch as the report does not establish facts, there is, in the absence of the X ray, no evidence to support the doctor's opinion even if the report is received.
*650 The majority concludes secondary evidence may be received because there is no difference between receiving secondary evidence of a writing and receiving secondary evidence of an X ray (majority opn, at 646). However, when the contents of a writing are in issue the jury need only evaluate the reliability of the secondary evidence. The evaluation of expert opinion evidence involves a two-step process: the jury must first determine whether the proponent has established the facts upon which the expert opinion rests and then determine the weight which should be accorded the expert's opinion based upon those facts. It is difficult to see how the expert's opinion could be considered more than speculative if the only factual foundation for it is the expert's own analysis of what the unproduced X ray showed.
As a matter of policy there is much sense behind the existing rule. The value of X-ray evidence rests largely on the expert's interpretation of what it shows. Manifestly, reasonable medical experts can read X rays differently and their readings can only be tested or verified by examining the picture they rely on. A physician  whether testifying in person or submitting a written report  who states an opinion that the patient suffered an enlarged heart (or a spinal injury or any number of other conditions which may be otherwise difficult to clinically diagnose) is wholly insulated from contradiction if the X ray on which that opinion is based is not before the court but appears only by the description in the report to the client. An opposing expert cannot judge the value of the opinion or contradict it if he or she has only the opponent's statement of what was in the X ray.
The majority would avoid the danger of receiving this secondary evidence by insisting that the court ensure that doctor's report is "authentic and `correctly reflects the contents'" of the X ray (majority opn, at 645). It is difficult to see how a court could ensure the accuracy of the facts upon which Dr. Ploss decided that decedent had an enlarged heart. The report states only two challenged measurements and, based upon them, the doctor opined that decedent's heart was enlarged. Whether Dr. Ploss' report is received as secondary evidence or not, there will be nothing before the court which will enable an opponent to challenge the measurements on which the opinion rests. At best, it can only be said that if the measurements were accurate the heart was or was not enlarged.
*651 It is not a question of "mistrusting" the doctor's report, as the majority seems to believe (see, majority opn, at 646); it is a question of whether the doctor's report will supply a factual basis for his opinion. The expert's opinion has "no greater probative force than the basis on which * * * it is founded" (Matter of Riehl v Town of Amherst, 308 N.Y. 212, 216; see generally, Sawyer v Dreis & Krump Mfg. Co., 67 N.Y.2d 328, 334-335), and the expert's self-serving and unverifiable reading of the X ray does not supply the necessary predicate to support an opinion. It would seem that in these circumstances the reception of secondary evidence, rather than preventing fraud or prejudice, would facilitate it.
SMITH, J. (dissenting).
I would affirm. At the beginning of the trial, the plaintiff sought to preclude the defendant from introducing an X-ray report in the absence of the X ray itself. In addition to the issue of why the X ray was unavailable, there was some question about the accuracy of the report. The court sustained the objection to the report but agreed that the defendant could make a record as to the efforts to find the X ray. Testimony as to the efforts to find the X ray was given to the court in the absence of the jury. Before the end of the trial testimony, the X ray was found, strong evidence that an adequate search for the X ray had not been made.
The principal issues here are (1) whether the introduction of the secondary evidence of an X-ray report is relevant any longer given the posture of this case, (2) whether the trial court should have admitted the X ray after it was found on the last day of the trial and (3) whether in this case the "best evidence" rule precludes the introduction of an X-ray report as a business record and the testimony of the doctor who prepared the report, without the admission of the X ray itself into evidence. On the facts of this case, the trial court did not err or abuse its discretion in its rulings.

I
Defendant issued to plaintiff's husband a conditional receipt providing that $100,000 in life insurance would become effective if certain conditions were met. After her husband's death from causes unrelated to his heart, plaintiff commenced this action, alleging defendant is obligated to pay her $100,000. Defendant asserted, inter alia, that conditions precedent for the insurance to become effective were not met in that at the time of his application, plaintiff's husband suffered a heart *652 disorder which made him an unacceptable risk. At the beginning of the trial, because defendant was not able to locate an X ray taken of plaintiff's husband, plaintiff moved to preclude defendant from introducing into evidence any report or expert testimony concerning the X ray. During trial, defendant located the X ray and sought to introduce it into evidence. Supreme Court refused the request.
The Appellate Division affirmed and awarded plaintiff the proceeds of her deceased husband's life insurance policy, stating, inter alia:
"Contrary to the defendant's contentions, the X ray report it sought to admit into evidence at trial is inadmissible without the introduction of the underlying X ray. * * * Further, the X ray report is not a business record since, in this case, it was not created for the purpose of diagnosis and treatment. * * *
"We find that, given the broad discretionary powers of a trial court to control the case before it, it was not an improvident exercise of discretion for the trial court to preclude admission of the newly found X ray on the last day of trial after all the witnesses had testified." (197 AD2d 510, 510-511.)
Defendant appeals, pursuant to leave granted by this Court, arguing that the exclusion of the X-ray report and the refusal to permit the introduction of the X ray after it was found require the granting of a new trial.

II
The ruling of the trial court precluding use of the X-ray report without the production of the X ray was not erroneous. When the trial court made its ruling, it stated that defendant could have an opportunity to make a record as to why the X ray was not produced. The jury was told (in language objected to by plaintiff) that the X-ray report was not admitted in the absence of the X ray and that the X ray could not be located. Subsequently, out of the presence of the jury, testimony was taken about the efforts to locate the X ray.
Before any further argument was held on the admissibility of the X-ray report, the X ray was found. Once the X ray was found, the issue of the admission of the secondary evidence, an X-ray report, was no longer the primary issue. The issue became whether the newly found X ray should be admissible *653 into evidence. The issue of whether the X-ray report was admissible is relevant now only if the majority is saying that on a retrial, it may be admitted into evidence.

III
The trial court did not abuse its discretion when it disallowed defendant's request for the introduction of the X ray found on the last day of the trial after all the witnesses had testified (Feldsberg v Nitschke, 49 N.Y.2d 636, 643; Agate v Morrison, 84 N.Y. 672). Plaintiff's decedent applied for insurance and received a conditional receipt in October 1985. He died in April 1986 of causes unrelated to his heart. Several weeks prior to his death, an X ray of his chest had been taken. At the time the trial commenced in October 1991, the X ray had not been found despite plaintiff's requests for it. However, other X rays, taken in 1973, 1974, and 1984, were admitted and analyzed. In the opinion of the expert who testified about those X rays, there was no evidence of an enlarged heart or of "cardiac abnormality."

IV
Given the facts presented here, the preclusion of the X-ray report and the testimony of the doctor who prepared the report, without the admission of the X ray itself into evidence, was proper.
The best evidence rule requires a party who seeks to prove the contents of a document to offer in evidence the original copy of that document. If the party does not offer the best evidence, but rather offers secondary evidence, the adversary's objection must be sustained. (4 Wigmore, Evidence §§ 1173-1175 [Chadbourn rev 1972].) The expert testimony of the physician regarding his X-ray report was inadmissible, as the best evidence, the actual X ray, was not in evidence.
Defendant argues that the X-ray report was secondary evidence. This report, however, is inadmissible hearsay unless it fits within one of the hearsay exceptions. Defendant contends the report fits within the business record exception of the hearsay rules. The Appellate Division, however, denied the admission of this report, as it was not completed within the normal course of the physician's business, for purposes of diagnosis and treatment (Hambsch v New York City Tr. Auth., 63 N.Y.2d 723, 725; Marion v Coon Constr. Co., 216 N.Y. 178; Wilson v Bodian, 130 AD2d 221, 231). It is not necessary to *654 agree with this aspect of the Appellate Division decision and to conclude that a doctor's report could never be admissible in the absence of an X ray.
Here, there was a specific challenge to the accuracy of the report and the measurements it contained. The testimony of one expert made it clear that the measuring of the heart on an X ray is an art as well as a science and that physicians could differ as to those measurements. Thus, plaintiff was not able to make her own measurements from an X ray that defendant was obligated to produce. An ability to cross-examine the doctor making the X-ray report was not an adequate substitute for production of the X ray.
Even if the report could be received as secondary evidence upon a foundation which explained adequately the absence of the X ray, the testimony on the search for the X ray was not sufficient. Moreover, the finding of the X ray raises an issue of the adequacy of any foundation.
For these reasons, I dissent and would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] The conditional receipt provided that, unless each of the listed conditions was "fulfilled exactly, no insurance will become effective prior to policy delivery". In the event that the applicant failed to comply with any of the conditions, the receipt would be considered null and void and defendant would be liable merely for return of the premium paid. The list of conditions included the following relevant provision: "all Proposed Insureds must be on the Effective Date * * * risks acceptable to the Company under its rules, limits and standards on the plan and for the amount applied for without modification and at the rate of premium paid with the application."
[2] According to trial testimony, the cardiac-thoracic ratio is a comparison of the diameter of the heart with the diameter of the thorax. The ratio is then compared to standardized tables to ascertain whether a claimant has a normal or enlarged heart, based on that person's height and weight.
[3] Although Judge Smith in dissent concludes that defendant's "testimony on the search for the X ray was not sufficient" to establish its loss (see, dissenting opn, Smith, J., at 654), we decline to rule on the sufficiency of defendant's proof on that issue, which was submitted merely to create a record and without the benefit of a full evidentiary hearing. That factual determination rests within the province of the trial court in the first instance  a determination which was bypassed in this case because of the trial court's erroneous placement of an absolute bar on the admission of secondary evidence.
[*] Congress has established by statute that a photograph or an X ray may be classified as a writing (see, Fed Rules Evid, rule 1001 [2]). Customarily, however, the photograph or X ray is used only as an aid to the witness' testimony. Testimony of what a photograph or X ray shows, without production of the original is, as the notes of the Advisory Committee point out, "most unusual" (see, Notes of Advisory Comm on Rules, reprinted in 28 USCA, Fed Rules Evid, rule 1002, at 570). The Committee recognized that in the case of X rays "substantial authority" (citing cases) called for the production of the original (ibid.). Moreover, the reception of secondary evidence of an X ray in Federal courts is justified, at least in part, by the fact that under the Federal Rules an expert may give an opinion based on facts not in evidence (see, Fed Rules Evid, rule 703).